5-3220 Watt v. Department of Transportation Good afternoon, your honor. Good afternoon, Mr. Lovell. I just want to check before you start. You retained five minutes for rebuttal purposes, correct? That is correct, your honor. Okay, fine. You can start whenever you're ready. Fire away. I am fired. I'm Gregory J. Lovell. I represent the appellant, David Lee Watt. Mr. Watt had over 20 years of service, federal service. He was an air traffic controller throughout the years before, during, and after 9-11. And in all those years, he never had a complaint concerning his performance on the job. His case is before you today because he was first suspended and then removed for the same offense. I do want to focus on the offense because we hear these highly charged words of fraud and misrepresentation. He was asked on a form, we know how forms work, tell us whether you have a history of alcohol-related offenses. He checked the box, yes. And then he had a little area about the size of my pinky in which to put in all the details. And he filled in 1996, like he'd done in the past, the year, and then FAA investigation for the current charge. I'm sorry, what did you say? The last part of your statement? Okay, he filled it in this little pinky-sized box, 1996, which was his firing conviction, and then FAA investigation for the current charge. How do we read a reference to FAA investigation as a reference to the current charge? His understanding was that his supervisors already knew that this was in progress. But there was no investigation going on, right? There was an investigation on the 1996 case, but at the time he filled out the form there was absolutely no investigation of the 2002 DUI, right? As far as Mr. Watt's mind, he told his story. I just asked a question about whether there was or was not an investigation. I don't know. I don't know if there was an investigation or not, but his thought, and again, the key is, is this a willful misrepresentation? His thought was it was being investigated, and that's how he filled out the form. What was being investigated? His 2001 situation. The 2001 situation wasn't a conviction. They have this kind of diversion program where you go into treatment and you don't get a record. So that was in progress, and that's all he was thinking about when he filled that out. So when he said FAA investigation, he was, in his mind, he was referring to his 2002 pending charge. 2001 charge. Right, to which there's no evidence in the record is there that there was any FAA investigation going on with respect to that charge. He's just going on the basis of what he thinks. I'm just asking you if there's any evidence on the record. No, no. But basically the evidence of the record is put in by the FAA, the employer, as charges against Mr. Watt. The investigation is not relevant to their case. And you have, because I'm not sure I saw it cited in the brief, which you referred to this, you called it a DOT investigation, obviously it's an FAA investigation, and you said that it lists, but I didn't see any cites in the brief, unless I missed it, to any testimony that he gave that described what it is he thought when he indicated it. I did not cite a particular testimony. But is there testimony, did he testify as to what he thought? You've represented here what he thought when he put that down. As I recall the hearing, it was a telephone hearing, he indicated that he had told the supervisors that he thought they knew about it and that it wasn't under investigation, and that's why he did that. Well, no, I know there was testimony that he thought he had told the supervisors, and that came up. I'm talking about his explanation as to what he meant by listing FAA investigation and whether he was referring. I don't recall at this point. After this happened, he was suspended, and he accepted the suspension. He was paid during this so-called suspension, right? He spent some time off the clock, and he also loses overtime. The suspension didn't take away his pay, right? It took away some pay that he would have earned because of premium items. But his base pay, he didn't lose. As far as base pay, I don't believe he did. However, you still have, you meet the definition of an adverse action. An adverse action can be as little as one. Yeah, but what's the indication that the suspension was punishment? Again, what case law talks about is there being an adverse action. Anytime you lose money, it's an adverse action. But what's the answer to my question? Was the suspension punishment? I would consider it punishment. What's the evidence that it was punishment? The evidence that it was punishment, again, is that he does lose some premiums and that it is a black mark on his record. You have it. They are citing this. His employer is citing this as a black mark on his record to support this. How can it not be punishment? In the earlier, the 1996 investigation, as I read the record or something, that there were two actions that he was suspended for a certain number of days. And his license, his pilot's license was suspended for 120 days. And he was also suspended for his position for five days. That was in connection with the 1996. So how do you read that? Are you saying he was punished twice for the same offense? He received two separate punishments for that offense? Is that the way you would explain that? Well, to the extent it was simultaneous and he could have appealed it, it does not appear as much as a double punishment than this does. Well, it wasn't really simultaneous. I mean, one was for 120 days and one was for five days. But the initiation of them was simultaneous. So that's what makes the difference, because it was simultaneous? Well, there are two issues to double jeopardy. Double jeopardy arises because of there being separate punishments. This isn't double jeopardy. Double jeopardy applies in the criminal context. This isn't double jeopardy. There are elements of double jeopardy and double punishment. But double jeopardy exists where you have an implication of double jeopardy when you have a passage of time. In this case, again, there is definitely an adverse action. And, again, an adverse action is as little as a written warning. Another point about this case is the litigation of it. We stood going into this hearing with an admission that it was a suspension. The position of the authority was double jeopardy doesn't apply. They didn't deny there was a double punishment. They just said it didn't apply. There's no dispute that it's a suspension. What else would you call suspending a certificate? I mean the stipulation you had in the case refers to his airman certificate was suspended for 60 days. Certainly that's a suspension. The question here isn't whether it's a suspension. It's whether or not it's an adverse action type of punitive suspension as opposed to another type of suspension. In this case, I would call it a punitive suspension. Again, just the fact that they cite it as part of the reason they're characterizing it as punishment. Well, do you agree that there are some kinds of suspensions which aren't punishment? There's a couple. You can have a suspension that isn't punishment. Uh-oh, this person looks a little off. We can't trust him, so let's get him examined. That's not necessarily punishment. I am suspending you pending investigation, reserving my right to punish later on. Those are both in the nature of, well, one's definitely remedial. Another one is an allowable type of situation. Suspending pending. Now, again, we came into this. Well, let me ask you about that. If he had been suspended, his pilot's license has been suspended. He's been reassigned to another job, and let's assume there was no premium pay difference. Let's assume one was in a job where there was no overtime, no premium pay, no nothing. Straight pay. And then his pilot's license is suspended, so he performs some other duties while still on the clock. Do you think that's a suspension or an adverse action which he would be entitled to appear under? If there was absolutely no change in pay, still an adverse action is a written warning is an adverse action. Okay. So your view is that even without the loss of pay, a suspension of a license, even when the person is reassigned, is performing the duties of his job. And when it is reflected as a negative mark on his record. Are there any cases that you are aware of that involve that? Well, the Eichner case is talking about using a prior written warning and considering that. Right, but a warning. Right. You can appeal a warning to the NDB. You can appeal a warning. Right. Okay. But again, that is an adverse action, so if you take an adverse action and then you punish them again for the same thing, you have a problem. Part of the reason for this is a person is going to accept a penalty. Say, oh, I'm not losing my job. Okay, I wasn't wrong, but okay, I'll live with that. But he couldn't have appealed what was done to him. He couldn't have appealed the suspension. Pardon me? I don't think he could have appealed that suspension. He could protest it. Well, he could protest it in the sense of saying, I don't like it, but since his pay was not cut off, he couldn't have filed an action with the board appealing it. This is kind of an interesting thing because basically you have two fists of the same entity hitting you. It would make sense for them to hit you both at the same time. But anyway, there's other issues here. Again, I still feel it's a double punishment. Now, you're in – I tell you, Mr. Lavelle, you are into your rebuttal. Do you want to save the rest of your rebuttal time? Yes, I shall. Okay, well, you're about four minutes and 15 seconds in, but we'll save your – give you your full rebuttal, your full five minutes, and we'll hear from the government. All right, thank you. Ms. Williams? May it please the Court, today the United States respectfully requests that the Court affirm the Merit Systems Protection Board's decision because it correctly determined that Mr. Watt failed to report a DUI conviction to the agency, falsified information on a government form, and that the penalty of removal did not exceed the range of permissible punishment for the sustained charges against Mr. Watt. Did he remain on the payroll during the period in which his license was suspended? There is no evidence in the record that Mr. Watt was docked any pay, lost any pay, did not remain on the payroll. The only evidence that was presented in the record is that there is a statement by Mr. Watt when his medical certificate was suspended that he couldn't work in his duties as an air traffic controller during that time. Looking also in the record, there is a health form manual that applies to air traffic controllers that states the procedures for when your medical certificate is temporarily suspended. At that point, you can be reassigned to other duties. In fact, Mr. Watt had been assigned to administrative duties earlier on in his career during the 1996 time when he did receive the DWI, or the first DWI. Looking at the evidence that's been submitted, it does not appear that Mr. Watt was not on the payroll, was officially suspended from his position or from his employment with the Youngstown Air Traffic Controller Department. You're saying that it's never been asserted that he was denied pay during the suspension period? Correct. It's never been asserted, and during the hearing Mr. Watt testified, and as the administrative law judge pointed out in the initial decision, there was no evidence that Mr. Watt had been suspended from his duties or from his position. Is there a prohibition, is the board correct, that there's a prohibition on double punishment? There is a prohibition, I mean, under the case law such as ADAMEC. Well, I know under the board precedent that's true, but is that correct? In cases under ADAMEC, yes. However, I apologize, I'm not understanding your question. Should we approve the board's rule that there can't be double punishment? Is that the correct rule under the statute and the regulations? Your Honor, I don't believe that the board ruled that there can be double punishment. In this particular case, the board found that there was not a suspension. Well, no, no, I understand that, but I'm asking a basic question. Do you agree that the board is correctly interpreting the statute and the regulations in barring double punishment in this line of cases, ADAMEC? Yes, Your Honor. Okay, so you don't dispute that. Now, what are the earmarks, a suspension can be a punishment, right? Correct, it can. Okay, and what are the earmarks of a suspension that is a punishment as opposed to one that isn't? Well, a suspension in the sense that you're not performing your duties, that in some way you're losing some pay or some entitlement that you have under your normal position. Would you say, to pick up on Judge Dyke's question, would you say that one of the earmarks would be the right to appeal to the board? Yes, Your Honor. In other words, you can appeal a suspension of more than 14 days? Correct. Correct, Your Honor. And in this particular case, it's important to note, as we set forth in our brief, the FAA is a regulatory… You couldn't have a punitive punishment that was less than 14 days? You can, but you don't have the right to appeal it. Well, Judge Rutherford, if someone's suspended punitively for 10 days, does that bar a subsequent punishment? If it constitutes an appealable adverse action within the same system of sanctions… Well, that's not what I'm asking. What I'm saying is it's not appealable because it's fewer than 14 days. It's 10 days, but it's designed to be punitive. Does that bar a later dismissal? Under the set of cases that we're working with, not unless it was within the same system of employee sanctions. I don't understand what that means. For instance, in the Ademac case, the employee was suspended twice under the same system of sanctions. The air traffic controllers have a system of sanctions that they work under. The FAA has a human resources manual with a system of sanctions, which was used ultimately in the decision to remove Mr. Watt from his position. When his medical certificate and his private pilot's license was suspended, that had nothing to do with his position as an air traffic controller. Okay, but I understand that. And I'm coming to the answer to your question. So that is to say that in this particular case, his removal from his position and his five-day suspension back in 1998 came under the human resources manual system of sanctions for the FAA employees. Over here we have the suspension of his medical certificate and the suspension of his private pilot's license. I understand that you're contending that it's not a punitive suspension, right? Not even that it's not a punitive suspension, but it has nothing to do with his employment as an air traffic control specialist. Okay, but my hypothetical question is suppose it did. Suppose they suspended him for 10 days. It's not an appealable adverse action, but then they later try to dismiss him. Under the board line of cases, that's prohibited, right? Correct. Okay. Correct. That's what I would say. However, it's not the case that we have here today. I understand. And you're also not precluded, though, from using past discipline for other conduct as weight in future discipline based on other conduct that's different. Absolutely, Your Honor. In fact, it is one of the Douglas factors when determining whether or not the agency has made a permissible sanction against an employee is past disciplinary record. Ms. Williams, during the suspension – I'll put quotes around the word suspension that we've been talking about here today. What was – where was Mr. Watt and what was he doing? During the suspension of his medical certificate in 2003? Yeah, the one we've been – the suspension we've been discussing today with you and Mr. Liddell. As far as the record reflects, Mr. Watt was still employed by the FAA. He – the record shows that during that period of time, he signed a certificate stating – once his medical certificate had been suspended, he signed a certificate or a statement that stated he understood that he could not perform his duties as an air traffic control specialist during that period of time. Was he doing anything physically for the FAA during that time? I know it's – I know there's no – I know there has not been an assertion that he was not paid, but was he physically coming into the airport or the facility? The record doesn't reflect with specificity whether – what exactly Mr. Watt was doing during that period of time, and we understand that that is an absence in the record that may be troublesome for the court. However, Mr. Watt testified during the hearing and had the ability to state what he was or was not doing during this period of time, and the only evidence that he brought forward was a statement that they put me back to work in November of 2003. Looking to the procedures that are to be followed by the FAA, when an air traffic control specialist loses his medical certificate for a temporary period of time, he can be reassigned to administrative duties. Therefore, the administrative law judge inferred from the evidence that was presented to her that he was not suspended from his position, that he probably was not performing his duties as an air traffic control specialist, but was performing some – in some capacity for the FAA. So that's what the AHA found? Yes. That he was doing something for the AHA – I'm sorry, something for the FAA during this period of, quote, suspension, close quote. Yes. Yes, Your Honor. The evidence is clear in this case as far as supporting the charges that were brought against Mr. Watt. It's clear that he failed to report the information about his 2001 DUI to his supervisors. The administrative law judge relied on testimony from his supervisors that they were not aware of it until 2003. The board took into account that there was an absence of any action on the part of his supervisors that would have been consistent with them knowing that he had had a second DUI on his record, such as putting him into rehab or suspending him. There was the fact that Mr. Watt had failed to report the 2001 DUI on his medical certificate, that there was a lack of motivation for the supervisors to lie, and that there was a presence of motivation for Mr. Watt to lie as he would have had to have changed his daily habits or he would have received some sanction from his office. So there was testimony that – I know there was testimony, and it's referenced in the briefs, that there was a debate or dispute between him and his supervisors as to whether he told them what he told them. But was he testified before the A.J.? Yes. That the reference on the medical certificate to the FAA investigation was a reference to what he thought or, you know, his position that he had told his supervisor, and that's what he meant by the reference? You know, Your Honor, I'm not sure if that came out in testimony. It definitely was contended before the MSPB that when he had filled out his medical certificate that he had put 1996 slash FAA investigation, and that meant the FAA investigation for the 2001 DUI. However, as you correctly pointed out earlier, there's no evidence in the record that the investigation was going on at the time that he filled out that medical certificate. The evidence shows that in April of 2003, a positive hit came up. In fact, it was – this is how it came up both times. And the FAA, for everyone that has a private pilot's license – and this further supports the separation between him having his pilot's license and medical certificate suspended and him being removed – when someone has a private pilot's license, the FAA runs a routine screening where they match him up in a computer to see if anybody has gotten a DUI somewhere and hasn't reported it. In both instances, that's the way that the FAA first became aware that he had one. After that, then that department of the FAA would notify his employers that he had had a DUI. Then they could start their own investigation and determine what – how they wanted to handle the situation. And that was in April – I believe it was April 28th or April 17th of 2003 that those letters are in the record. When you say that it was contended below, that that's what was the intent, was that contention made in lawyer argument or in testimony by the appellant? I believe that it was made in the record during the agency investigation. When the agency was conducting an investigation with Mr. Watt, I believe that's when it was made. His second charge – there's also substantial evidence in the record that his second charge was properly sustained. As stated, he obviously did not mark, yes, I have a 1996 and a 2001 DUI on his medical certificate. And there was testimony that he had – as a result of the 2001 DUI, he had completed one year in rehab, had his driver's license suspended, and had to attend safety school. He could give no reason why he had not informed his supervisors of those results from him having been arrested. As stated before, we don't believe this is an issue of double punishment. It's easily distinguishable from the ADAMAC line of cases. It's not within the same system of sanctions. Mr. Watt would have had his medical certificate and his pilot's license suspended regardless of whether he was an FAA employee or not. You would say – it would be your view that we wouldn't – I guess, Ms. Williams, you would say we don't have to decide today – it's the government's position that we would not have to decide today whether that board line of cases is correct or incorrect. Correct, Your Honor, because it's distinguishable. You don't get to the facts that would put you into that arena. Correct, correct. And as was pointed out earlier, the very same thing happened with the 1996 DUI. The agency suspended him for five days, and the FAA, separate and apart from that, suspended his pilot's license and his medical certificate. So if the petitioner is contending that this is double punishment, then it's interesting that he's not contending that what happened in 1996 or 1998 was double punishment as well. Finally, the board properly determined that the penalty of removal was appropriate in this situation. The board clearly – Well, what difference does that make whether he raised that in 1998? Maybe it's too late for him to raise it now. Why does he have to argue now that he was subjected to double punishment in 1998? You're correct, Your Honor. He doesn't necessarily need to raise the argument that it could be a timeliness issue, but it is relevant in the sense that this has happened in the past, and at no point has the petitioner even mentioned that the same issue occurred in 1996 or with the 1996 DUI. In closing, we simply want to state that the board properly determined that the penalty of removal was appropriate. The board clearly took into account the Douglas factor, such as the type of offense, Mr. Watts' position, his past disciplinary record, the agency's standard penalties, noting that in the agency's penalty table, the second failure to report a DUI, the penalty for that is removal. And finally, they took into account both aggravating and mitigating factors and determined that in the end, removal was the best sanction for Mr. Watt. And if Your Honor has no further questions, then it's for these reasons that the United States respectfully requests you affirm the MSPB's decision. Thank you, Ms. Williams. Mr. Lavelle, as I said, you have your full five minutes for rebuttal. Thank you. This case is kind of unique in one respect, in that there is a procedural glitch. When we went into this hearing, we came in with the understanding that the agency was admitting that there was a suspension. Therefore, there's no need to put into evidence issues related to a suspension. Their argument at that point was double jeopardy doesn't apply. Again, you only litigate those issues which are present. Perhaps a remedy in this case would be to remain for that particular issue. Again, the point going into hearing was, yes, he was suspended. No, double jeopardy doesn't apply. Talking about the various factors, one of the aggravating factors they contended was that they lost trust in Mr. Watt. However, how is it that they lose trust while they're letting him guide hundreds of thousands of people through the air with no additional supervision, no treatment, nothing? They were saying that there was nothing consistent with him having— During what period were they doing this? From the time he came back to work, which would be at least November, through the time he ultimately was gone, which is probably June. November of— 2003 to June of 2004. That's enough times to mess up once, I would think. I don't think they closed their eyes and went like this. They're relying on a statement of lack of trust in the face of the actuality of trust. They're relying on no possibility of rehabilitation when, since 2001, there's proof of rehabilitation. Everything he did was right from 2001 forward, as far as reporting, as far as his job duties, absolutely nothing wrong. So how do you come to a conclusion that there's no possibility of rehabilitation? The excuse given by the judge for not looking in favor of mitigation was a case called Hosey, which is mathematically 50 times worse in terms of mitigation than the case of Mr. Watt. Mr. Hosey had one-fifth of the length of service of Mr. Watt. He had five times the amount of discipline. His offense was clearly falsification. But the test, Mr. LaValle, is really what it really comes down to. Has there been a real abuse of discretion in considering the penalty? And you do have the fact here that there had been this previous situation and then this nondisclosure. I mean, it's not a situation – the petitioner cannot prevail simply by saying, well, I would have selected a different penalty. You have to show that it's just plainly and patently unreasonable. That's a difficult standard to attack. And the judge accepting the statement that they didn't, I would say that's an abuse of discretion. Accepting as an aggravating factor matters not raised in the removal documents or in the pre-hearing statement about, quote, angry outbursts. The statements in the hearing that basically our table of penalties – we look at that stuff, but our table of penalties overrules. That's definitely wrong, according to Douglas. So you have at least three separate reasons to consider an abuse of discretion. And again, we did not litigate whether there was a suspension or not. We came into that hearing with the admission and stipulation that he had been suspended. So therefore, again, you don't put in evidence on non-issues. I would request either that we mitigate this penalty, that the penalty not be allowed, or that the case be remanded for consideration of that particular issue if you consider it relevant. Again, we have a person who probably got you through the air for 20-some years without incident. A perfect employee. And what the judge says is, oh, he must have a drinking problem. One can infer that, but basically you have two isolated incidents for a person in his 50s. Again, I believe that we certainly have at least a considerable case for mitigation. Again, they trusted him with the lives of everybody in the area for half a year. They saw him rehabilitated and accepted bland statements to the contrary. I think accepting statements over fact constitutes an abuse of discretion. Thank you. Thank you, Mr. Lovell. Lovell, case is submitted.